1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KAREEM J. HOWELL,                           No.  2:20-cv-0096 KJN P

12                  Plaintiff,

13        v.                                      ORDER

14   E. JOHNSON, et al.,

15                  Defendants.

16

17        Plaintiff is a state prisoner, proceeding pro se.  Plaintiff seeks relief pursuant to 42 U.S.C.

18   § 1983, and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.  This

19   proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

20        Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a).

21   Accordingly, the request to proceed in forma pauperis is granted.

22        Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C.

23   §§ 1914(a), 1915(b)(1).  By this order, plaintiff is assessed an initial partial filing fee in

24   accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct

25   the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and

26   forward it to the Clerk of the Court.  Thereafter, plaintiff is obligated to make monthly payments

27   of twenty percent of the preceding month's income credited to plaintiff's trust account.  These

28   payments will be forwarded by the appropriate agency to the Clerk of the Court each time the

1  amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C.

2  § 1915(b)(2).

3  Screening Standards

4          The court is required to screen complaints brought by prisoners seeking relief against a

5  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

6  court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

7  "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

8  monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

9          A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

10  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

11  Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an

12  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

13  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

14  pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

15  Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir.

16  2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably

17  meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at

18  1227.

19          Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain

20  statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

21  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic

22  Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

23  In order to survive dismissal for failure to state a claim, a complaint must contain more than "a

24  formulaic recitation of the elements of a cause of action;" it must contain factual allegations

25  sufficient "to raise a right to relief above the speculative level."  Bell Atlantic, 550 U.S. at 555.

26  However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the

27  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v.

28  Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal

1  quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as

2  true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the

3  pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236

4  (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

5  Civil Rights Act

6      The Civil Rights Act under which this action was filed provides as follows:

7          Every person who, under color of [state law] . . . subjects, or causes
            to be subjected, any citizen of the United States . . . to the
8          deprivation of any rights, privileges, or immunities secured by the
            Constitution . . . shall be liable to the party injured in an action at
9          law, suit in equity, or other proper proceeding for redress.

10  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

11  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

12  Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983

13  liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no

14  affirmative link between the incidents of police misconduct and the adoption of any plan or policy

15  demonstrating their authorization or approval of such misconduct).  "A person 'subjects' another

16  to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an

17  affirmative act, participates in another's affirmative acts or omits to perform an act which he is

18  legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy,

19  588 F.2d 740, 743 (9th Cir. 1978).

20      Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

21  their employees under a theory of respondeat superior and, therefore, when a named defendant

22  holds a supervisorial position, the causal link between him and the claimed constitutional

23  violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979)

24  (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d

25  438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), cert.

26  denied, 442 U.S. 941 (1979).  Vague and conclusory allegations concerning the involvement of

27  official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673

28  ////

3

1   F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal

2   participation is insufficient).

3   Plaintiff's Complaint

4          Plaintiff alleges the following.  On an unidentified date, defendant Johnson approached

5   plaintiff's cell and asked him to masturbate in front of her; plaintiff refused.  Johnson left.

6   Subsequently, on January 2, 2020, Johnson returned and plaintiff asked her for a new mental

7   health therapist.  Johnson responded that plaintiff could not fire her; she "knew all about

8   [plaintiff's] legal complaints about our program and believe me people want you out of here."

9   (ECF No. 1 at 9.)  Defendant Johnson then falsely accused plaintiff of indecent exposure, and as

10  she walked away, stated:  "sue that!  That's what [we] think about your complaints.  You're out

11  of this program for good buddy."  (ECF No. 1 at 9.)  Later, plaintiff asked Officer Moua whether

12  Johnson had reported any misbehavior by plaintiff, and Moua said no.  On January 6, 2020,

13  defendant Green called plaintiff out for a one-on-one mental health session.  While discussing

14  Johnson and her alleged plan, Green said, "you have sued a lot of our friends here, and they want

15  you out."  (ECF No. 1 at 10.)  Green then stated he was conducting a mental health assessment

16  for the Johnson allegations and that he and Johnson had decided that Green would be plaintiff's

17  new primary mental health provider.  Plaintiff asked Green "so what's the plan?  You and

18  Johnson along with your co-workers all want me out of the mental health program because I sued

19  the staff here?" and Green admitted, "Yeah.  The point and goal is to remove our problem, and

20  you're the problem."  (ECF No. 1 at 10.)  Plaintiff then informed defendant Temple, a

21  correctional officer, of the plan by defendant Johnson and defendant Green to have plaintiff

22  removed from the mental health treatment program, and Temple refused to provide plaintiff a 602

23  appeals form.  On January 6, 2020, plaintiff informed defendant McKelvey, supervisor of

24  defendants Johnson and Green, that they were illegally plotting to get plaintiff removed from the

25  mental health treatment program because of plaintiff's complaints and lawsuits.  (ECF No. 1 at

26  11.)  McKelvey stated, "then maybe you shouldn't be filing these complaints and lawsuits."

27  (ECF No. 1 at 12.)  McKelvey then walked away.  Plaintiff alleges that he has been falsely

28  accused of committing a prison rules violation of indecent exposure by defendant Johnson in

4

1  direct retaliation for plaintiff filing a prison complaint and lawsuit on her co-workers.  (ECF No.

2  1 at 12.)

3  Discussion

4      Initially, the undersigned observes that plaintiff fails to include any charging allegations

5  against defendant Lynch, the warden, or defendant Gipson, the Director of Mental Health.  It does

6  not appear that plaintiff can state a cognizable retaliation claim against such defendants because

7  he includes no facts connecting or linking them to the alleged retaliation claims.  As set forth

8  above, plaintiff may not name such defendants based solely on their supervisorial roles.

9      As for the remaining defendants, it is unclear whether plaintiff can state retaliation claims

10  against them.  While the filing of inmate appeals and lawsuits is protected conduct under the First

11  Amendment, plaintiff must identify the adverse action taken by each defendant, as well as address

12  all of the elements of a retaliation claim.

13      "Prisoners have a First Amendment right to file grievances against prison officials and to

14  be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012)

15  (citation omitted).  To state a viable First Amendment retaliation claim, a prisoner must allege

16  five elements:  "(1) An assertion that a state actor took some adverse action against an inmate

17  (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

18  exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

19  correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  Conduct

20  protected by the First Amendment includes communications that are "part of the grievance

21  process."  Brodheim v. Cry, 584 F.3d 1262, 1271 n.4 (9th Cir. 2009).  If plaintiff intends to assert

22  a retaliation claim, he must specifically identify the protected conduct at issue, name the

23  defendant who took adverse action against him, and plead that the allegedly adverse action[1] was

24  taken "because of" plaintiff's protected conduct.[2]

25  _____

[1] For purposes of evaluating a retaliation claim, an adverse action is action that "would chill a
26  person of ordinary firmness from continuing to engage in the protected activity[ ]."  Pinard v.
Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006).  See also White v. Lee, 227 F.3d
27  1214, 1228 (9th Cir. 2000) (same).

28  [2] Prisoners have a constitutional right to file prison grievances and pursue civil rights litigation in

5

1    First, it is unclear whether plaintiff can state a cognizable claim against defendant

2 McKelvey because plaintiff alleges no facts demonstrating that McKelvey took an adverse action

3 against plaintiff based on plaintiff's protected conduct.  Rather, plaintiff sets forth one verbal

4 interaction with McKelvey, none of which identifies McKelvey's involvement in the alleged false

5 rules violation report.  To the extent plaintiff names McKelvey simply based on McKelvey's

6 supervisorial role, such claim is unavailing as discussed above.

7    Second, plaintiff fails to identify the adverse action taken by defendant Temple.

8    Third, it is unclear whether defendant Johnson actually filed a rules violation report

9 against plaintiff.  Indeed, plaintiff was informed by Officer Moua that no complaint had been

10 lodged.  Plaintiff states he was "falsely accused," but does not state that a rules violation report

11 was actually filed such that an adverse action occurred.[3]  By extension, the court cannot

12 determine whether plaintiff has identified an adverse action by defendant Green, because plaintiff

13 does not indicate that Green completed a mental health assessment that was included in any

14 allegedly false rules violation report.  If no rules violation report was actually filed, plaintiff may

15 not be able to state a cognizable retaliation claim because he must identify an adverse action

16 taken by each named defendant.[4]

17 ////

18

19 the courts.  See Rhodes, 408 F.3d at 567.  Prison officials may not retaliate against prisoners for exercising these rights.  Id. at 568; see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997);

20 Bradley v. Hall, 64 F.2d 1276, 1279 (9th Cir. 1995).

21 [3]  Not every unfavorable or unpleasant action will be sufficient to support a claim under section 1983 for retaliation.  See, e.g., Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000)

22 (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, literally, "after this, therefore because of this.").  Rather, in the prison context, cases in this Circuit addressing

23 First Amendment retaliation claims involve situations where the action taken by the defendant was clearly and significantly adverse to the plaintiff.  Rhodes, 408 F.3d at 568 (arbitrary

24 confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) (retaliatory

25 placement in administrative segregation for filing grievances); Hines v. Gomez, 108 F.3d 265,

26 267 (9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt).

27 [4]  Verbal threats are not cognizable.  See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (mere threat does not constitute constitutional wrong, nor do allegations that naked threat was for

28 purpose of denying access to courts compel contrary result).

1    The court finds the allegations in plaintiff's complaint so vague and conclusory that it is

2    unable to determine whether the current action is frivolous or fails to state a claim for relief.  The

3    court has determined that the complaint does not contain a short and plain statement as required

4    by Federal Rule of Civil Procedure 8(a)(2).  Although the Federal Rules adopt a flexible pleading

5    policy, a complaint must give fair notice and state the elements of the claim plainly and

6    succinctly.  Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  Plaintiff must

7    allege with at least some degree of particularity overt acts which defendants engaged in that

8    support plaintiff's claim.  Id.  Because plaintiff has failed to comply with the requirements of Fed.

9    R. Civ. P. 8(a)(2), the complaint must be dismissed.  The court, however, grants leave to file an

10   amended complaint.

11   If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions

12   about which he complains resulted in a deprivation of plaintiff's constitutional rights.  See, e.g.,

13   West v. Atkins, 487 U.S. 42, 48 (1988).  Also, the complaint must allege in specific terms how

14   each named defendant is involved.  Rizzo v. Goode, 423 U.S. 362, 371 (1976).  There can be no

15   liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a

16   defendant's actions and the claimed deprivation.  Rizzo, 423 U.S. at 371; May v. Enomoto, 633

17   F.2d 164, 167 (9th Cir. 1980).  Furthermore, vague and conclusory allegations of official

18   participation in civil rights violations are not sufficient.  Ivey v. Bd. of Regents, 673 F.2d 266,

19   268 (9th Cir. 1982).  Therefore, absent facts not alleged here, plaintiff should not name Lynch or

20   Gipson as defendants in any amended complaint.

21   In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to

22   make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended

23   complaint be complete in itself without reference to any prior pleading.  This requirement exists

24   because, as a general rule, an amended complaint supersedes the original complaint.  See Ramirez

25   v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint

26   supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation

27   omitted)).  Once plaintiff files an amended complaint, the original pleading no longer serves any

28   function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim

7

1  and the involvement of each defendant must be sufficiently alleged.

2       A prisoner may bring no § 1983 action until he has exhausted such administrative

3  remedies as are available to him.  42 U.S.C. § 1997e(a).  The requirement is mandatory.  Booth v.

4  Churner, 532 U.S. 731, 741 (2001).  California prisoners or parolees may appeal "departmental

5  policies, decisions, actions, conditions, or omissions that have a material adverse effect on the[ir]

6  welfare. . . ."  Cal. Code Regs. tit. 15, §§ 3084.1, et seq.  An appeal must be presented on a CDC

7  form 602 that asks simply that the prisoner "describe the problem" and "action requested."

8  Therefore, this court ordinarily will review only claims against prison officials within the scope of

9  the problem reported in a CDC form 602 or an interview or claims that were or should have been

10  uncovered in the review promised by the department.  Plaintiff is further admonished that by

11  signing an amended complaint he certifies his claims are warranted by existing law, including the

12  law that he exhaust administrative remedies,[5] and that for violation of this rule plaintiff risks

13  dismissal of his entire action.

14       In accordance with the above, IT IS HEREBY ORDERED that:

15       1.  Plaintiff's request for leave to proceed in forma pauperis is granted.

16       2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff

17  is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C.

18  § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the

19  Director of the California Department of Corrections and Rehabilitation filed concurrently

20  _____

21  [5]  Plaintiff concedes that he did not complete the administrative appeals process prior to filing the instant action.  Indeed, the alleged incidents took place in January of 2020, and plaintiff filed the

22  instant action on January 14, 2020.  Plaintiff appears to claim that administrative remedies were rendered unavailable by defendant Temple's refusal to provide plaintiff with an appeals form.

23  However, plaintiff is cautioned that such allegation is likely insufficient to demonstrate administrative remedies were unavailable because plaintiff could obtain an appeals form from a

24  different correctional officer.  See, e.g., Espinoza v. Asuncion, 2017 WL 3670780 (N.D. Cal. Aug. 25, 2017) ("Mr. Espinoza could not reasonably conclude -- based only on his three attempts

25  to obtain a Form 602 from Officer Parra and one attempt with an unnamed officer -- that no administrative remedies were available to him."), citing see Draper v. Rosario, 836 F.3d 1072,

26  1079-80 (9th Cir. 2016) (dismissed due process claim based on failure to exhaust administrative

27  remedies).  Failure to exhaust administrative remedies prior to filing suit in federal court may result in further delays and additional costs if a case is subsequently dismissed based on failure to

28  exhaust administrative remedies.

8

herewith.

     3.  Plaintiff's complaint is dismissed.

     4.  Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

        a.  The completed Notice of Amendment; and

        b.  An original and one copy of the Amended Complaint.

Plaintiff's amended complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint must also bear the docket number assigned to this case and must be labeled "Amended Complaint."

     Failure to file an amended complaint in accordance with this order may result in the dismissal of this action.

Dated:  July 22, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/howe0096.14n

1
2
3
4
5
6
7
8                            UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KAREEM J. HOWELL,                          No.  2:20-cv-0096 KJN P

12               Plaintiff,

13        v.                                     NOTICE OF AMENDMENT

14   E. JOHNSON, et al.,

15               Defendants.

16

17        Plaintiff hereby submits the following document in compliance with the court's order

18   filed_____.

19        _____        Amended Complaint
     DATED:
20

21                                              _____
                                                Plaintiff
22

23

24

25

26

27

28